**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
-----------------------------------------------------------------------X

KEELAI LARA,                                    CASE NO.: 1:19-cv-23485

      Plaintiff                                    **COMPLAINT**
                                                **Plaintiff Demand a Trial by Jury**

      v.

BAPTIST HEALTH SOUTH FLORIDA, INC.,
WEST KENDALL BAPTIST HOSPIAL, INC.,
BAPTIST HOSPITAL OF MIAMI, INC,
SOUTH MIAMI HOSPITAL, INC. and
BERNIE ARCENA, individually and in his official capacity,

      Defendants.
-----------------------------------------------------------------------X

Plaintiff, KEELAI LARA, through her counsel, Derek Smith Law Group, PLLC, hereby complains

of Defendants BAPTIST HEALTH SOUTH FLORIDA, INC., WEST KENDALL BAPTIST

HOSPITAL, INC., BAPTIST HOSPITAL OF MIAMI, INC, SOUTH MIAMI HOSPITAL, INC.

and BERNIE ARCENA individually and in his official capacity and alleges as follows:

## NATURE OF CASE

1.  Plaintiff complains pursuant to 42 U.S.C. § 1981 ("§ 1981"), Title VII of the Civil Rights Act

    of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the

    Civil Rights Act of 1991, Pub. L. No. 102-166 ( "Title VII"); Title I of the Americans with

    Disabilities Act of 1990 (Pub. L. 101-336) ("ADA"); the Florida Civil Rights Act of 1992,

    Section 760.10 *et seq.* ( "FCRA"); and seeks damages to redress the injuries Plaintiff suffered

    as a result of being exposed to sex/gender discrimination, sexual harassment, sexual assault,

    race discrimination, disability discrimination, hostile work environment, retaliation,

    intentional infliction of emotional distress, and unlawful constructive discharge.

2. This action is to redress Defendants' unlawful employment practices against Plaintiff, including Defendants' unlawful discrimination and sexual harassment against Plaintiff because of her gender and race, and Defendants' retaliation against Plaintiff for her rejection of her supervisor, Director ARCENA's sexual harassment, all leading to her unlawful constructive discharge when she was force to resign out of fear for her life.

## JURISDICTION AND VENUE

3. This is an action for monetary damages and injunctive relief pursuant to § 1981, Title VII, ADA, and Florida law.

4. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under § 1981, Title VII, and ADA.

5. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because Defendants were located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## PROCEDURAL REQUIREMENTS

7. Plaintiff has complied with all statutory prerequisites to file this action.

8. On or around October 23, 2018, Plaintiff dual filed her charge with the Equal Employment Opportunity Commission ("EEOC"), Charge number 210-2019-00415.

9. On or around June 25, 2019 Plaintiff received the EEOC's Right to Sue Letter in reference to her EEOC charge.

2

10. Plaintiff filed this complaint within ninety (90) days of the issuance of the EEOC's Right to Sue letter.

11. An EEOC filing automatically operates as a dual Florida Commission on Human Relations ("FCHR") filing.

## PARTIES

12. At all material times, Plaintiff KEELAI LARA (hereinafter referred to as "Plaintiff" or "LARA") is an individual Hispanic woman who is a resident of the State of Florida and resides in the Miami-Dade County.

13. After Plaintiff filed her EEOC Charge, she married and legally changed her last name from RODRIGUEZ to LARA.

14. At all material times, Defendant WEST KENDALL BAPTIST HOSPITAL, INC. is a Florida Non-Profit Corporation created and authorized under the laws of the State of Florida.

15. At all material times, Defendant BAPTIST HEALTH SOUTH FLORIDA, INC. is a Florida Non-Profit Corporation created and authorized under the laws of the State of Florida.

16. At all material times, Defendant BAPTIST HOSPITAL OF MIAMI, INC is a Florida Non-Profit Corporation created and authorized under the laws of the State of Florida.

17. At all material times, Defendant SOUTH MIAMI HOSPITAL, INC. is a Florida Non-Profit Corporation created and authorized under the laws of the State of Florida.

18. Defendants BAPTIST HEALTH SOUTH FLORIDA, INC., WEST KENDALL BAPTIST HOSPITAL, INC., BAPTIST HOSPITAL OF MIAMI, INC, and SOUTH MIAMI HOSPITAL, INC. are collectively, "Defendant" or the "HOSPITAL."

19. Defendant HOSPITAL is an employer as defined by all laws under which this action is brought and employs the requisite number of employees.

20. At all material times, Defendant BERNIE ARCENA (hereinafter referred to as "ARCENA" or "DEFENDANT"), was and is an individual Filipino man believed to reside in the state of Florida and live in Miami-Dade County.

21. At all material times, Defendant ARCENA was and is the Director of Intensive Care Unit ("ICU") for HOSPITAL.

22. At all material times, ARCENA held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, with the power to hire and fire Plaintiff.

23. Defendants HOSPITAL and ARCENA are herein referred to collectively as "Defendants."

## STATEMENT OF FACTS

24. In or around November 2013, HOSPITAL hired Plaintiff LARA as a Secretary/Clerk in the ICU unit at West Kendall Baptist Hospital. At all material times, as a Secretary, Plaintiff scheduled appointments, maintained supplies, admitted patients, administered, and maintained patient records, broke down medical charts for record-keeping, and coordinated billing.

25. At all material times, Plaintiff's Supervisor while working for HOSPITAL was ICU Director, ARCENA.

26. On or about December 22, 2017, while Plaintiff was sitting down at the employee Christmas Party, **ARCENA sat down next to Plaintiff and grabbed her thigh. He then moved his hand up and squeezed her upper thigh and genitalia.**

27. ARCENA's sexual conduct shocked Plaintiff and made her feel very uncomfortable.

28. Plaintiff's co-worker TINA HUGH (hereinafter referred to as "HUGH") was seated in front of Plaintiff, and thus, witnessed ARCENA's sexual advancement upon Plaintiff.

4

29. Later that night, ARCENA overheard Plaintiff announce that she was leaving the event. ARCENA decide to leave at the same time Plaintiff was leaving and escort Plaintiff to her car, although she never requested that he escort her. While leaving, ARCENA told her that he needed to disclose something important to her.

30. ARCENA added, "**I want to tell you something, but I'm scared that it can ruin our friendship**."

31. Based on the context of ARCENA's above statement and his inappropriate and unwanted behavior earlier that night, Plaintiff understood that ARCENA wanted to make further sexual advances towards her. As such, Plaintiff interrupted ARCENA's announcement with, "It's ok, you don't need to tell me anything." Plaintiff then quickly started her vehicle and left.

32. Immediately, Plaintiff called her co-worker HUGH to relay how uncomfortable ARCENA's behavior outside made her at the office holiday party.

33. From that day on, ARCENA began to sexually harass Plaintiff while at work on an increasingly severe and pervasive basis.

34. By way of example, in or around December 2017, ARCENA began calling Plaintiff into his office with unnecessary frequency, and he always closed the door as soon as she entered the office. By way of example, he would request that she physically come to his office to ask a quick question for topics that he would ordinarily ask over the phone.

35. After each meeting, ARCENA demanded that he hug Plaintiff before she left his office. When Plaintiff objected to his requests for physical contact, he would not take Plaintiff's objections for an answer and continued to demand that she hug him.

36. During each embrace, ARCENA did not place his hands on Plaintiff's back, as one typically does in a hug. Instead, **he placed them on the front of her ribcage so that he could touch the side part of her breasts.**

37. **Many times, during these forced embraces, ARCENA would try to fondle Plaintiff's breasts.**

38. Plaintiff understood her continued employment with HOSPITAL was conditioned on keeping ARCENA happy, which meant allowing ARCENA to touch her in a sexual manner and make unwanted sexual comments to her.

39. Plaintiff understood that if she didn't comply with his demands, she would lose her job or suffer other adverse work conditions.

40. ARCENA's extremely uncomfortable and unwanted sexual advances made Plaintiff extremely emotionally distressed, and she was continually afraid of working around ARCENA.

41. Not only did ARCENA's conduct create a sexually hostile work environment, but this also constituted quid pro quo sexual harassment.

42. On or about January 5, 2018, ARCENA called Plaintiff into his office for the sole purpose of having her embrace him.

43. During the embrace, **ARCENA placed his hands on Plaintiff's buttocks**.

44. Plaintiff immediately pulled away from ARCENA, expressing once again that his level of physical contact was unwanted.

45. ARCENA became increasingly hostile after being rejected by Plaintiff.

46. Right before Plaintiff left the office, **ARCENA approached her a second time and forcibly kissed and sucked her neck, leaving large traces of saliva on her neck**.

47. Following the above incident, for the rest of the workday, Plaintiff avoided ARCENA's calls as he called requesting that she come to his office again.

48. While still in shock, Plaintiff tried to avoid ARCENA by telling ARCENA that she could not physically meet with him in his office because the unit she was working in was busy or that nurses were receiving a new patient admission.

49. In response to Plaintiff avoiding him, ARCENA called one of Plaintiff's direct supervisor to force her to visit his office so he could subject her to further sexual harassment.

50. ARCENA's ongoing sexual harassment interrupted Plaintiff's workday and affected her ability to perform her job duties adequately, on top of causing her severe anxiety and psychological distress.

51. Meanwhile, by this time, two of Plaintiff's Hispanic co-workers had filed race discrimination claims against ARCENA and Upper Management, which consisted of mostly of employees of Filipino descent. ARCENA, who was Filipino, was well known to have a history of both racial discrimination against Hispanic employees and favoritism towards Filipino employees, and in particular, viewing Hispanic female employees as sex objects and acting accordingly.

52. At all material times, Plaintiff understood that HOSPITAL allowed ARCENA to continue to favor Filipino employees and to discriminate and retaliate against Plaintiff's Hispanic co-workers.

53. Thus, Plaintiff feared that reporting ARCENA to Human Resources would cause both ARCENA and Upper Management to retaliate against not only herself, but her mother, who works in another department at the same HOSPITAL location. Moreover, she understood that if she were to make a complaint against ARCENA, her complaint would be futile.

54. On or about July 9, 2018, ARCENA sexually assaulted Plaintiff at an even greater degree than his previous sexual assaults.

55. ARCENA called Plaintiff into his office, and just as she opened the door to leave, he abruptly closed it. Before she could react, **ARCENA aggressively groped Plaintiff, grabbing her breasts**.

56. During the attack, Plaintiff tried to open the door to escape, but **ARCENA stopped her from leaving. ARCENA used one hand on her breasts to keep her from leaving and the other hand to shut the door**.

57. **ARCENA then shoved his hands into Plaintiff's underwear and groped her buttocks**.

58. **Plaintiff then pushed ARCENA away as he tried to kiss and bite her neck, which resulted in him licking her ear, again leaving large traces of saliva on her person that she had to clean before returning to work.**

59. Plaintiff following this incident, Plaintiff avoided ARCENA at all costs, by ignoring his gaze and looking away when she saw him at work.

60. ARCENA feigned ignorance as to why Plaintiff was so bothered by him, asking her, "**Why do you look so serious?**"

61. On or about July 20, 2018, ARCENA approached Plaintiff and asked if she was, "**Mad at him**," to which Plaintiff responded, **"yes."** ARCENA asked her why. Plaintiff told him, "**You know why I am upset.**"

62. ARCENA then asked her if, "**You want to come into my office and talk about it**."

63. Plaintiff refused to go to ACENA's office, knowing he would take the opportunity to degrade further and sexually assault her.

64. On or about July 24, 2018, Plaintiff needed to go to ARCENA's office to request two days off of work. She had no other option but to go to ARCENA to make the official request.

65. Before Plaintiff could finish her sentence, ARCENA again brought up the topic of Plaintiff's feelings toward him. He asked, "**Why are you mad at me?**"

66. Plaintiff then clearly stated she was uncomfortable and disturbed by his sexual assault on her two weeks prior. Plaintiff added that she was engaged to be married, with a son at home, and had been engaged since before she even began working for HOSPITAL. Plaintiff then tried to sway the conversation toward business, requesting the days off she needed.

67. However, ARCENA ignored Plaintiff's boundaries and continued to pump her to admit some level feeling for him. He kept saying, "**No, I think there is more**," implying that she had sexual feelings towards him when there was no basis for such implications.

68. Plaintiff continued to tell ARCENA that she only wanted a professional relationship and that she had no desire for any other time of relationship with ARCENA.

69. ARCENA then scoffed at Plaintiff regarding her time off request and refused to grant her request.

70. Plaintiff knew if she played the ARCENA's sick game by providing sexual favors or by continuing to allow him to sexually assault her, that life working for HOSPITAL would be easier and she could be able to modify her schedule as needed.

71. Later that afternoon, Plaintiff saw ARCENA again in the hopes that he would be attentive to her reasonable request. She reminded him about the two days she needed off.

72. ARCENA kept Plaintiff in his office for two hours, going back and forth on his answer as to whether Plaintiff would be given the time off or not. He claimed over and over that, "**I will get in trouble**," for granting her the two days.

73. Notably, Plaintiff was a part-time secretary at HOSPITAL who already only worked two days a week, so it is reasonable to assume there were other employees who would cover her shift so as not to place a burden on the unit.

74. Plaintiff reminded ARCENA, "**You are the boss**," so there should not be any reason for him to be in trouble with if he granted her request. ARCENA vaguely replied to her, "**People will notice and get mad**," failing to state who the "people" were.

75. Plaintiff understood that ARCENA kept Plaintiff in his office for two hours because he hoped that he would break her will and provide sexual favors for him in exchange for providing the two days off from work. However, Plaintiff continued to reject ARCENA's sexual advances during this meeting.

76. Defendant ARCENA retaliated against Plaintiff for rejecting his sexual advances.

77. The longer ARCENA kept Plaintiff in his office for such a simple discussion, the clearer his ulterior motives became. His motives were to force Plaintiff to provide sexual favors for him.

78. By way of example, **<u>ARCENA asked Plaintiff with, "What are you going to do to convince me to give you those days off? Maybe if you put down your hair it will convince me.</u>**"

79. ARCENA discriminated against Plaintiff on the basis of her sex, implying that in order for her request to be granted, she need to look sexier for him at the workplace in order to please him.

80. Knowing no other way to change ARCENA's mind, Plaintiff untired her hair, letting it down in hopes that it would be sexually pleasing to ARCENA and that he would grant her request. Once she let her hair down, ARCENA granted her request for time off.

81. After ARCENA agreed to Plaintiff's request for time off, **<u>he still wanted more from Plaintiff and asked her, "What are you going to do for me now that I gave you the days off?"</u>**

82. Hearing the above and afraid ARCENA would sexually assault her again, Plaintiff began to thank ARCENA and she stood up to leave his office. But while Plaintiff began to say how thankful she was for him allowing her time off, **ARCENA grabbed her face with his hands and painfully kissed her on her lips. Plaintiff's eyes began to tear up out of humiliation, shock and fear.**

83. ARCENA then demanded Plaintiff to look him in the face. ARCENA said, "**It was just a joke, I'm sorry. Do you forgive me?**"

84. ARCENA forced Plaintiff to say that she forgave him before she could finally leave his office.

85. Soon after Plaintiff returned to her desk, her co-workers, two nurses SUSANA CARO and AYESHA PACHECO, saw her in distress and asked what happened. Plaintiff fled to an empty patient room, began crying again, and told them about ARCENA sexually assaulting her.

86. On or about July 27, 2018, Plaintiff made an appointment with the HOSPITAL's Chief Nursing Officer and Human Resources to make an official report ARCENA's sexual assault, sexual harassment, and gender discrimination.

87. On or about July 28, 2018, HOSPITAL's Human Resources Directors informed Plaintiff that they had put ARCENA on administrative leave during what would become an investigation into her complaints.

88. Soon after Plaintiff began medical treatment for Plaintiff severe anxiety and extreme emotional distress caused by ARCENA.

89. At all material times, Plaintiff was disabled according to medical professionals, due to her anxiety and extreme emotional distress caused by ARCENA.

90. Since ARCENA's placement on administrative leave, **ARCENA stalked Plaintiff on the internet. Plaintiff also learned that ARCENA told employees at HOSPITAL that**

**Plaintiff is "evil" and she is the reason he was terminated. ARCENA disseminated this information about Plaintiff so that other employees at HOSPITAL would retaliate against Plaintiff for engaging in protected activity.**

91. Since ARCENA's placement on administrative leave, **Plaintiff received threats to her safety** from individuals within ARCENA's social circle that worked for HOSPITAL.

92. Because of ARCENA's aggressive and retaliatory conduct, Plaintiff requested HOSPITAL provide her with ARCENA's home address so she could file a restraining order against him. However, HOSPITAL refused to give Plaintiff the necessary information.

93. Because of the above, Plaintiff requested that she be moved to another unit or another hospital location. HOSPITAL responded, in an annoyed tone, saying that, "**We can't promise anything**."

94. As HOSPITAL failed to provide adequate assurances that HOSPITAL was working to provide Plaintiff with a safe and retaliation-free work environment, Plaintiff continued to fear for her safety at the workplace and her emotional distress continued to grow.

95. At no time did Defendant HOSPITAL initiate the interactive process to identify a reasonable accommodation for Plaintiff's known disability, instead they ignored her request.

96. At all material times, Defendant HOSPITAL ignored Plaintiff's requests for a reasonable accommodation.

97. On or about August 14, 2018, HOSPITAL's inaction forced Plaintiff to resign from work.

98. In her resignation letter dated August 14, 2018 to HOSPITAL, Plaintiff explains that the actions of ARCENA and HOSPITAL made her, "Feel it is no longer safe to resume employment with your organization," and that she was suffering from, "severe anxiety along

with PTSD like symptoms with or without [ARCENA] being," at the workplace, and her feeling "immensely uncomfortable" at the workplace due to the retaliation by her coworkers.

99. Plaintiff notes in her resignation letter dated August 14, 2018 that, "the stress related to this situation has ultimately forced me to resign and not return to these intolerable working conditions and retaliatory atmosphere."

100. At all material times, Plaintiff was a qualified individual whose job performance was satisfactory before she became a victim of discrimination in the workplace, which lead to her extreme emotional distress and medical conditions.

101. The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected Plaintiff on an ongoing continuous basis.

102. Defendant ARCENA subjected Plaintiff to ongoing sexual harassment and gender discrimination because she was a Hispanic woman, and retaliated against her when she refused his sexual advances, together to create a hostile environment

103. As a result of Defendants' continued harassment of Plaintiff, she suffered, and will continue to suffer, numerous injuries including physical, economic, and emotional damages.

104. Plaintiff alleges that, at all material times, that Defendant HOSPITAL knew or should have known of ARCENA sexually assaulting and discriminating against Plaintiff.

105. Plaintiff alleges that, at all material times, that Defendant HOSPITAL was grossly negligent in supervising ARCENA and training employees in anti-discrimination employment practices.

106. Plaintiff claims that Defendants discriminated against and terminated Plaintiff because of her race, sex/ gender, disability, and because she complained or opposed the unlawful conduct of Defendants related to the above protected classes.

107. As a result of Defendants' above actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

108. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, Plaintiff suffers from high stress, anxiety, depression, PTSD, and other symptoms in addition to physical ailments.

109. As a direct and proximate result of Defendant ARCENA's conduct, Plaintiff has been injured and suffered severe psychological and emotional injuries including degradation, humiliation, mental anguish, loss of the capacity for the enjoyment of life, loss of dignity, and other nonpecuniary and intangible injuries.

110. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

111. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

112. As Defendants' conduct has been malicious, reckless, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants.

113. At all times material, Defendant ARCENA was an employee, servant and/or agent of Defendant HOSPITAL and at all times material was acting within the course and scope of his employment.

114. Therefore, Defendant HOSPITAL is vicariously liable for the tortious acts committed by Defendant ARCENA as set forth in the above paragraphs.

115. Plaintiff claims a continuous practice of discrimination and claims a continuing violations and makes all claims herein under the continuing violations doctrine.

116. Plaintiff further claims constructive and/or actual discharge to the extent Plaintiff is terminated from Plaintiff 's position as a result of the unlawful discrimination and retaliation.

117. Plaintiff claims unlawful constructive and/or unlawful actual discharge and also seeks reinstatement.

118. Plaintiff claims alternatively (in the event Defendant Claims so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

## COUNT I: DISCRIMINATION UNDER TITLE VII
## [AGAINST DEFENDANT HOSPITAL]

119. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 24 to 117.

120. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2. [Section 703] states in relevant part as follows:

(a) Employer Practices; it shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her/his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

121. The Defendant's constructive discharge and harassment of Plaintiff was, in whole or in part because she was a Hispanic woman.

122. Defendant showed preferential treatment to Filipino and Asian employees and discriminated against employees that were Hispanic in the ICU Department.

123. Defendant failed to remedy work conditions that the Hispanic employees that complained of and allowed the unlawful discrimination towards Hispanic employees to continue.

124. Knowing that HOSPITAL allowed him to discriminate against Hispanics, Defendant ARCENA—who is Filipino and Asian man— targeted Plaintiff because she is a member of the Hispanic race.

125. Over a period of eight months, Defendant ARCENA—who was the Director of the ICU and Plaintiff's supervisor—sexually harassed and sexually assaulted Plaintiff on countless occasions, including Defendant ARCENA conditioning Plaintiff's employee benefits and continued employment on satisfaction of his sexual demands.

126. Defendant ARCENA targeted Plaintiff to degrading a humiliating unlawful treatment because he wanted to assert dominance over her as a Hispanic woman.

127. Throughout 2017 and 2018, Defendant engaged in discriminatory practices which resulted in Plaintiff being subjected to a discriminatory hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended.

128. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her sex/gender, and race.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendant HOSPITAL for damages, including compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

## COUNT II: RETALIATION UNDER TITLE VII
## [UNDERLINE]AGAINST DEFENDANT HOSPITAL[/UNDERLINE]

129. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 30 to 117.

130. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

131. The Defendant has discriminated against and harassed the Plaintiff in the terms and conditions of her employment, and has denied the Plaintiff continued employment in retaliation for her lawfully having engaged in statutorily protected activity and as a result of her complaints of discrimination.

132. Over a period of eight months, Defendant ARCENA—who was the Director of the ICU and Plaintiff's supervisor—sexually harassed and sexually assaulted Plaintiff on countless occasions. Defendant ARCENA conditioned Plaintiff's employee benefits and continued employment on satisfaction of his sexual demands.

133. At all material times, Plaintiff opposed and complained of Defendant ARCENA's unlawful conduct.

134. After Plaintiff opposed and complained of Defendant ARCENA's unlawful conduct, Defendants forced Plaintiff to resign was, in whole or in part, in retaliation for her complaints and opposition to unlawful discrimination in the workplace.

135. The Defendants have discriminated against and harassed the Plaintiff in the terms and conditions of her employment and has denied the Plaintiff the ability to have continued employment in retaliation for her lawfully having engaged in statutorily protected activity and as a result of her complaints of discrimination.

136. Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions or privilege of employment because of her opposition to the unlawful employment practices of Defendant.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendant HOSPITAL for damages, including reinstatement, compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

### COUNT III: DISCRIMINATION UNDER 42 U.S.C. Section 1981
### [AGAINST ALL DEFENDANTS]

137. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 24 to 117.

138. 42 USC Section 1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

139. Defendants showed preferential treatment to Filipino and Asian employees and discriminated against employees that were Hispanic in the ICU Department.

140. Hispanic employees complained of racial discrimination in the workplace, especially discrimination by Defendant ARCENA—who was Filipino and Asian.

141. Defendants failed to remedy work conditions that the Hispanic employees that complained of and allowed the unlawful discrimination towards Hispanic employees to continue.

142. Knowing that HOSPITAL allowed him to discriminate against Hispanics, Defendant ARCENA targeted Plaintiff because she is a member of the Hispanic race.

143. Plaintiff, as a member of the Hispanic race, was discriminated against by Defendants because of race as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendants for damages, including reinstatement, compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

## COUNT IV: RETALIATION UNDER 42 U.S.C. Section 1981
## [AGAINST ALL DEFENDANTS]

144. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 30 to 117.

145. 42 USC Section 1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

146. Defendants showed preferential treatment to Filipino and Asian employees and discriminated against employees that were Hispanic in the ICU Department.

147. Defendants failed to remedy work conditions that the Hispanic employees that complained of and allowed the unlawful discrimination towards Hispanic employees to continue.

148. Knowing that HOSPITAL allowed him to discriminate against Hispanics, Defendant ARCENA—who is Filipino and Asian man— targeted Plaintiff because she is a member of the Hispanic race.

149. Plaintiff was forced to resign out of fear for her life because of Defendant ARCENA's continued retaliation and threats by other Filipino employees of HOSPITAL after the employees learned that Plaintiff was the reason Defendant ARCENA was on administrative leave.

150. Plaintiff, as a member of the Hispanic race, was retaliated against and threatened by Defendants and Defendants' employees because of her race as provided under 42 USC Section 1981.

151. Plaintiff claims unlawful retaliation under 42 U.S.C. 1981 for opposition to Defendants' unlawful employment practices and has suffered damages as set forth herein.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendants for damages, including reinstatement, compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

## COUNT V: DISCRIMINATION UNDER FCRA
### [AGAINST ALL DEFENDANTS]

152. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 24 to 117.

153. At all times relevant to this action, Plaintiff was and is a Hispanic woman.

154. Plaintiff suffered as a result of being exposed to sex/gender discrimination, sexual harassment, sexual assault, race discrimination, disability discrimination, hostile work environment, retaliation, and unlawful constructive discharge.

155. Over a period of eight months, Plaintiff's supervisor, Defendant ARCENA sexually harassed and sexually assaulted Plaintiff on countless occasions, including Defendant ARCENA conditioning Plaintiff's employee benefits and continued employment on satisfaction of his sexual demands.

156. Defendant ARCENA targeted Plaintiff to degrading a humiliating unlawful treatment because he wanted to assert dominance over her as a Hispanic woman.

157. Due to Defendant ARCENA's sexual harassment and threats by other Filipino employees of HOSPITAL, Plaintiff was forced to resign out of fear for her life.

158. Defendants are prohibited under the FCRA from discriminating against Plaintiff because of her sex/gender, disability discrimination, and race with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

159. Defendant violated the FCRA by unlawfully discharging and discriminating against Plaintiff based her sex and race and her emotional distress, including her anxiety and PTSD, in which the Defendants were fully aware of.

160. At all material times, Plaintiff was a qualified individual who's job performance was satisfactory before she became a victim of discrimination in the workplace, which lead to her extreme emotional distress and medical conditions that include her suffering from, "severe anxiety along with PTSD like symptoms with or without [ARCENA] being," at the workplace, and her feeling "immensely uncomfortable" at the workplace.

161. Plaintiff notes in her resignation letter dated August 14, 2018 that, "the stress related to this situation has ultimately forced me to resign and not return to these intolerable working conditions and retaliatory atmosphere."

162. Defendant HOSPITAL violated the sections cited herein by failing to consider Plaintiff's requests for a reasonable accommodation, as well as discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of her disability and for having complained of discrimination.

163. Defendant HOSPITAL violated Plaintiff's rights under the FCRA by (i) discriminating against Plaintiff regarding the conditions and privileges of employment because of her disability, (ii) forcing Plaintiff to resign because of her disability, (iii) failing to consider Plaintiff's requests for a reasonable accommodation, and (iv) because Defendant HOSPITAL failed to initiate such discussions.

164. Plaintiff has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendants for damages, including reinstatement, compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

**COUNT VI: RETALIATION UNDER FCRA**
**[AGAINST ALL DEFENDANTS]**

165. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 30 to 117.

166. Over a period of eight months, Plaintiff's supervisor, Defendant ARCENA sexually harassed and sexually assaulted Plaintiff on countless occasions. Defendant ARCENA conditioned

Plaintiff's employee benefits and continued employment on satisfaction of his sexual demands.

167. At all material times, Plaintiff opposed and complained of Defendant ARCENA's unlawful conduct.

168. After Plaintiff opposed and complained of Defendant ARCENA's unlawful conduct, Defendants forced Plaintiff to resign was, in whole or in part, in retaliation for her complaints and opposition to unlawful discrimination in the workplace.

169. The Defendants have discriminated against and harassed the Plaintiff in the terms and conditions of her employment and has denied the Plaintiff the ability to have continued employment in retaliation for her lawfully having engaged in statutorily protected activity and as a result of her complaints of discrimination.

170. Plaintiff was forced to resign out of fear for her life because of Defendant ARCENA's sexual harassment and threats by other Filipino employees of HOSPITAL after the employees learned that Plaintiff was the reason Defendant ARCENA was on administrative leave.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendants for damages, including reinstatement, compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

## COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### [AGAINST DEFENDANT ARCENA]

171. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 24 to 110.

172.    Over a period of eight months, Defendant ARCENA sexually assaulted Plaintiff on countless occasions.

173.    Without privilege or consent, Defendant ARCENA intentionally caused offensive and harmful contacts with Plaintiff's person by removing Plaintiff's clothing, holding Plaintiff down, and forcibly touching Plaintiff's vagina and buttocks.

174.    In forcibly touching Plaintiff, Defendant ARCENA intentionally caused or acted with a reckless disregard of causing Plaintiff to suffer severe mental anguish and suffering.

175.    Defendant ARCENA's conduct and actions in forcibly kissing, groping, holding, and touching Plaintiff went beyond all possible bounds of decency and was shocking, atrocious and utterly intolerable in a civilized society.

176.    Defendant ARCENA's actions described in the above paragraphs was intentional, extreme, and outrageous.

177.    As direct and proximate consequences of Defendant ARCENA's conduct, Plaintiff has been injured and suffered severe psychological and emotional injuries including degradation, humiliation, mental anguish, loss of the capacity for the enjoyment of life, loss of dignity, and other nonpecuniary and intangible injuries that have required, or will require in the future, medical and psychological treatment.

**WHEREFORE**, Plaintiff respectively demands judgment against Defendant ARCENA for money damages in excess of $15,000, costs, and such other and further relief as the Court may deem just and proper.

## COUNT VIII: SEXUAL BATTERY
### [AGAINST DEFENDANT ARCENA]

178.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 24 to 84.

179.   Over a period of eight months, Defendant ARCENA sexually assaulted Plaintiff on countless occasions.

180.   Without privilege or consent, Defendant ARCENA intentionally caused offensive and harmful contacts with Plaintiff's person by removing Plaintiff's clothing, holding Plaintiff down, and forcibly touching Plaintiff's vagina and buttocks.

181.   Defendant ARCENA acted with the intent to cause the foregoing offensive and harmful contacts, against Plaintiff's will and despite her protests and physical resistance.

182.   As the direct and proximate result of Defendant ACERA's offensive and harmful contacts, Plaintiff has suffered injuries, damages, and losses – including, without limitation, past and future physical injury, pain, and suffering; past and future emotional and mental distress, pain, and suffering; past and future harm to Plaintiff's education and its opportunities and benefits; impaired earnings capacity, past and future; and past and future losses of the enjoyment of life.

**WHEREFORE**, Plaintiff respectively demands judgment against Defendant ARCENA for money damages in excess of $15,000, costs, and such other and further relief as the Court may deem just and proper.

## COUNT IX – ASSAULT
## [AGAINST DEFENDANT ARCENA]

183.   Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 24 to 84.

184.   Before and during the course of forcibly kissing, embracing, holding, and groping Plaintiff, Defendant ARCENA intentionally threatened immediate harmful contacts with Plaintiff's person by use of his hands, arms and other body parts.

185.   Defendant ARCENA intentionally caused or acted with a reckless disregard of causing

Plaintiff to fear that such threatened contacts put her in imminent peril and that, in light of his size, strength and surroundings, Defendant had the present ability to carry them out.

186. Plaintiff readily apprehended these threatened contacts, which created a well-founded fear that sexual and other violence to her person was about to take place.

187. As the direct and proximate result of Defendant ARCENA's threatened contacts, Plaintiff has suffered injuries, damages, and losses – including, without limitation, past and future physical injury, pain, and suffering; past and future emotional and mental distress, pain, and suffering; past and future harm to Plaintiff's education and its opportunities and benefits; impaired earnings capacity, past and future; and past and future losses of the enjoyment of life.

**WHEREFORE**, Plaintiff respectively demands judgment against Defendant ARCENA for money damages in excess of $15,000, costs, and such other and further relief as the Court may deem just and proper.

## COUNT X – FALSE IMPRISONMENT
## [AGAINST DEFENDANT ARCENA]

188. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 32 to 83.

189. Without privilege or authority, Defendant ARCENA intentionally and physically restrained and confined Plaintiff by use of his hands, arms and other body parts for the purpose of and with the knowledge that his actions would result in Plaintiff being confined and restrained in, among other places, his office at HOSPITAL.

190. Defendant ARCENA acted with the intent to restrain and deprive Plaintiff of her liberty, against Plaintiff's will and despite her protests and physical resistance.

191. Throughout Defendant ARCENA's restraint and confinement of her person, Plaintiff had no reasonable means or avenue of escape.

192.    Plaintiff in no way consented to being so restrained or confined by Defendant ARCENA.

193.    Defendant ARCENA's acts of restraining and confining Plaintiff were wholly without authority and completely unreasonable in light of the foregoing facts and circumstances.

194.    As the direct and proximate result of Defendant ARCENA's unlawful restraint and deprivation of her liberty, Plaintiff has suffered injuries, damages, and losses – including, without limitation, past and future physical injury, pain, and suffering; past and future emotional and mental distress, pain, and suffering; past and future harm to Plaintiff's education and its opportunities and benefits; impaired earnings capacity, past and future; and past and future losses of the enjoyment of life.

**WHEREFORE**, Plaintiff respectively demands judgment against Defendant ARCENA for money damages in excess of $15,000, costs, and such other and further relief as the Court may deem just and proper.

### COUNT XI:  DISCRIMINATION UNDER
### THE AMERICANS WITH DISABILITIES ACT
### [<u>AGAINST DEFENDANT HOSPITAL</u>]

195.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 86 to 110.

196.    Plaintiff claims Defendant HOSPITAL violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

197.     SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of

employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

198.    At all material times, Plaintiff was a qualified individual who's job performance was satisfactory before she became a victim of discrimination in the workplace, which lead to her extreme emotional distress and medical conditions that include her suffering from, "severe anxiety along with PTSD like symptoms with or without [ARCENA] being," at the workplace, and her feeling "immensely uncomfortable" at the workplace.

199.    Plaintiff notes in her resignation letter dated August 14, 2018 that, "the stress related to this situation has ultimately forced me to resign and not return to these intolerable working conditions and retaliatory atmosphere."

200.    Defendant HOSPITAL violated the sections cited herein by failing to consider Plaintiff's requests for a reasonable accommodation, as well as discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of her disability and for having complained of discrimination.

201.    29 C.F.R. § 1630.2(o)(3) and (4) explains the term "**Reasonable Accommodations**" stating:

> (3) To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.
>
> (4) A covered entity is required, absent undue hardship, to provide a reasonable accommodation to an otherwise qualified individual who meets the definition of disability under the "actual disability" prong ( paragraph (g)(1)(i) of this section), or "record of" prong ( paragraph (g)(1)(ii) of this section)…

202.    Defendant HOSPITAL violated Plaintiff's rights under the ADA by (i) discriminating against Plaintiff regarding the conditions and privileges of employment because of her disability, (ii) forcing Plaintiff to resign because of her disability, (iii) failing to consider Plaintiff's requests

for a reasonable accommodation, and (iv) because Defendant HOSPITAL failed to initiate such discussions.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendants for damages, including reinstatement, compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

## <u>JURY DEMAND</u>

Plaintiff requests a jury trial on all issues to be tried.

Dated: Miami, Florida
       August 20, 2019

Respectfully submitted,

DEREK SMITH LAW GROUP, PLLC

*Attorneys for Plaintiff*

Kelly O'Connell, Esq.
Fla Bar No.: 0119312
Kelly@dereksmithlaw.com
701 Brickell Avenue, Suite 1310
Miami, FL 33131
Tel: (305) 946-1884